THIS was a bill filed by Hunt to be relieved from a judgment obtained by Martin as assignee of Cole, man upon a note executed by Hunt for 40 shares of bank slock. Hunt alleges that on the 9th of October *83 1812, an agreement was entered into between him and Coleman, whereby- he agreed to deliver to Coleman a quantity of bagging, transfer to him one hundred shares of bank stock and to convey to him a lot of ground in the town of Lexington, including a rope walk, with all the machinery and implements thereto attached; and that Coleman agreed to pay therefor a part in property, and the balance in notes and bonds on other persons, to be assigned by him; that Hunt accordingly delivered the bagging and Coleman made, partial payments, tiie amount of which, Hunt docs not recollect; that on the-27th of the same month a settlement was made between tiie parties, and Coleman was found to be in arrear eighteen thousand dollars, and that it was mutually agreed between Hunt and Coleman, that instead of paying the demand agreeable to the terms of the original contract, Coleman should have further time to make the payments, and accordingly executed his several obligations to Hunt, payable at the several'periods agreed on by the parties ; that in compliance with his part of the agreement, Hunt executed two notes for- the stock, one for sixty and the other for forty shares ; that the one fur sixty shares has been discharged by himself and Coleman,* and that for forty shares is the same assigned by Coleman to Martin and on which the judgment at law has'been recovered. Hunt also alleges, that previous to tbe settlement, Coleman, in part compliance with the agreement on his part, assigned to Hunt an obligation on a certain Samuel Long, for 4000 dollars, payable thirty-six months afterdate, and that Long has since become insolvent and unable to pay any part of the obligation ; that in the fall 1814, Coleman also failed in trade and is now utterly insolvent; and that at the time of Coleman’s failure, he was, and still is, • indebted to Hunt $30.00, payable the 22d of April, 1815. the like sum payable the 22d of October, 18.15, $2,300 paid by Hunt in part discharge of the note for sixty shares of stock, $6.100 payable 1st of February, 1815, and $760 19 payable the 15th of December, 1814; together with the note on Long for $4000, which cannot be collected in consequence of Long’s insolvency. These sums, or so much of them as may be necessary, Hunt prays may be applied to the extinguishment of the judgment at law, and he asks for get» *84 era! relief. Coleman, though summoned with the sub»poena, failed to appear and answer.
A debt contracted by the payee sTnoteto^he payor, after ttenToFih» notefora ~ valuab.e con siderati-.i by and noitfce of áuch ¡.ssignment'o the payorturmsh in eqú-ty o enjoin the assignee eringTheV" stmouin, not. bvih'e^iTee to pay sue*6 de :t and hia entire vency'
Money voluntariiy paid bythe payor of a t9 canno^bTre. coveredbac$c o« the the payor and the as> sisn<p’> the cor-sitiera tioñhas fad* ed.
*84 Martin,in answer, any edge of the dealings between Hunt and Coleman, except what he had received from others and by a bill filed by Hunt in the Fayette circuit court. He alleges that he is a bona fide assignee of the obligation on Hunt, for a valuable consideration paid to Coleman ; charges that Hunt, after he had notice of the assignment to him, came to an agreement with Coleman, in 1814 ; whereby, Coleman, for a valuable consideration, agreed to satisfy and discharge the obligation then in the hands of Martin, fo>* the forty shares of stock and insists that Hunt has no equity against the judgment at law, which he pleads and relics on as a bar to the-relief sought bj Hunt.
The circuit court on a final hearing, dismissed the-bill and dissolved the injunction, with damages and costs, and from that decree Hunt has appealed to this court.
3. The claim which Hunt makes against Coleman apcount of the note for gtOOO upon Long, is not sufficiently established. There is no proof of Long’s insolvency, nor is there any evidence to shew, that Nuüt has used due diligence to recover the money of Long, without which, Coleman, as the assignee of the note, cannot be- made responsible. The other <Jemauds, however, which Hunt alleges be held upon Coleman, are, as against him, indisputably established, and as they are much greater in amouut than the judgment recovered by Martin, it is obvious, that Hunt's right to relief turns upon the propriety of applying those demands to the extinguishment of the judgment.
4. That the demand for 86,100 and that of ¡grCO 19. cents, cannot be so applied, is perfectly clear. For both these demands appear not only to be unconnected. the agreement, in compliance with which - Hunt Save ^'s note for the stock on which the judgment was recovered, but to have been founded upon an agree. ment made with Coleman, after he had assigned the f01> stook ;o Martin, and Hunt had been informed ot the assignment.
5- Nor can we suppose, that the demand which he has against Coleman for the g2?30Q, paid by Hunt in *85 part discharge of the note for sixty shares of bank Stock, can be so applied. The payment was made to Martin, who was the assignee of that note as well as the one for forty shares, and Hunt having voluntarily made the payment, confiding that Coleman would ful. fil his part of the agreement, he cannot be permitted to reclaim the money of Martin. But besides that, there still remain the demands upon the two notes of ¡§3000 eash, which amount to more than the judg. ment at law, against which, Hunt seeks tobe relieved, These two notes we’e given by Coleman on the same contract on which Hunt gave the notes for the bank • j , stock, and the notes thus given by the parties respect ively, formed, in part, the consideration of the mutual engagements.
in general, a chrncerv has not juris ;iction in case mutual in-contracts ah though they-are respect, conJiderations, the one of the othei’» be-may bp had at laws but where, by cy^one af” the parties, a suit at law would be un. eourtofov quity aequires jvrisjj^of re-”* liefatlaw.
In sucb CRSeg. the same reHaf will be fh^assfgnee ofthe defeiik ting and insqlventparty as would ^renagSnst himself’ifthe note had not been assign-
*85 It is true, that in technichal language, these notes would be called independent promises or covenants and according to the principles of the common law, the failure to perform those on the one side would be no defence to an action brought for anon performance on the other. But in reason, and according to the principles of natural law, those notes on each side being parts of the same contract, are considered mutual conditions, and neither party has a right to insist upon the performance on the other side, if he, himself, has failed to perform the contract on his part. It is in this light that engagements of this sort are viewed in a court or equity, and whenever the case is presented under circumstances which give to that court jurisdic. tion, it invariably refuses to permit either party to en. forcea performance of the contract against the other without requiring a performance or a compensation for non performance on his part. In ordinary cases of this sort, a court of equity has not indeed jurisdic tion, because each party has an adequate remedy law. But where one Of the parties, as in this case, llas, since entering into the contract, become totally unable to perform his part of the contract, by which the remedy at law fails, a court of equity will, on that ground alone, assume jurisdiction of the case.
6, Besides, there is another circumstance in this case, whica gives to a court of equity, jurisdiction, For the contract embraced the sale of real estate; and in such case, either parly has a right to resort to a court of equity, either to rescind or to enforce the specific *86 execution of the contract. Tt is evident, therefore, as ^ respects Coleman, that Hunt has a clear equity against the enforcement of the contract on his part, an<^ I)e must'have the same right of defence in equity against Martin, the assignee of Coleman, as he has against Coleman.
To contracts Sy!e pertyl the jurisJiction qf a court of tacttes'at" so that either party may resort to it to theiThe^peeific performanee or the the^contract-
r*ght, is, in fact, expressly reserved by the actof assembly * which makes notes.and bonds for money or property, assignable.
y. But it is contended, that Hunt has waived or. forfeited this right, because, by á contract' made with Coleman after, the assignment of the note for bank stock to Martin, Coleman, for a valuable considera. tion paid by Hunt, undertook to discharge the note in ^16 har)ds of Martin ; and in support of tljis position, we are ceierred to the case of Young vs. Grundy, 7 Crauch, 548. But that case is wholly unlike the present. In (hat case, the payor of a note, for a new con. s>deration, undertook to pay it to the assignee; but in this case, it was Coleman, the payee of the note, who, for a new consideration paid him by Hunt, the payoc, undertook to discharge the note, and it is impossito see, how Hunt, by paying Coleman to discharge the note, could increase his obligation to pay it. We conclude, therefore, that Hunt has a clear right to res'st the execution of the judgment at law, obtained by Martin, as assignee of Coleman, and that the circuit court erred in dissolving the injunction. It is true, ^hat Hunt has not conveyed the lot óf ground with the rope wa'k on it, and that he still retains the legal title thereto. That, he alleges, was estimated in the contract with Coleman at seven thousand dollars, and there is nothing in the cause to shew that it is of greater value. That sum is not equal to the amount due from Coleman to Hunt upon the two notes of gSOOO each, including interest, and to that'extent, Hunt undoubtedly has alien upon the lot. It is, however, possible, that the lot might command more, if exposed to sale, and it is right that it should be directed to be sold-
If, on the sale, it should produce more than will 1>Q sufficient to satisfy the two notes of three thousand dollars each, held by Hunt upon Coleman, together with the costs of suit, the overplus should be applied towards the discharge of the judgment at law, enjoined *87 in this case ; but if there should be no such overplus, the whole judgment must be perpetually enjoined.
The decree must, therefore* be reversed with costs, and the cause be remanded, that a decree may be entered, and other proceedings had, not inconsistent with this opinion;
A bill in chancery asserting a right under a

 This no.te too was assigned to Martin.

 1 Rigest 99.